## MARTIN et al. v. UNITED STATES.
### No. 2694.

Circuit Court of Appeals, First Circuit.

Dec. 17, 1932.

Harry M. Ehrlich, of Springfield, Mass. (John M. Noonan, of Springfield, Mass., on the brief), for appellants.

Elihu D. Stone, Asst. U. S. Atty., of Boston, Mass. (Frederick H. Tarr, U. S. Atty., of Boston, Mass., on the brief), for the United States.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

BINGHAM, Circuit Judge.

June 2, 1931, Nathan B. Martin, Peter Marechelo, John Schook, and John Porter were indicted charged, in the first count, with the unlawful manufacture of intoxicating liquor on the 10th day of March, 1931, and in the second count, with the unlawful possession of intoxicating liquor on that day. After the defendants had entered pleas of not guilty, they seasonably filed a motion to suppress evidence and to quash the indictment, on the ground that the evidence was obtained as a result of a search and seizure without a search warrant and in violation of the defendants' constitutional rights. The motion was denied subject to exception. After the jury were impaneled, the defendants renewed the motion, which was again denied subject to exception. In the course of the trial evidence, acquired at the time of the arrest of the defendants and the search and seizure referred to in the motions, was introduced subject to defendants' exception. This was the only material evidence introduced at the trial in support of either charge. At the close of the government's evidence a motion to strike out the evidence was denied, subject to defendants' exception, and the defendants, having rested without the introduction of any evidence, moved for a directed verdict, which was also denied. The jury found each defendant guilty. Nathan B. Martin was sentenced to pay a fine of $5,000 and be imprisoned in the penitentiary for a term of three years; Peter Marechelo, John Schook, and John Porter were each sentenced to pay a fine of $2,500 and be imprisoned in the penitentiary for a term of two years, from which sentences each of the defendants appealed.

There is but one important question raised by these exceptions and that is whether the evidence obtained at the time of the arrest and seizure was obtained in violation of the defendants' constitutional rights as declared in the Fourth and Fifth Amendments to the Constitution of the United States.

It appears that on March 10, 1931, five or six federal prohibition agents, as a result of instructions from the Boston office, proceeded to Springfield, Mass., to investigate the activities at the Young farm, so called, having with them two police officers of the city of Springfield. On the farm was a barn, a three-story wooden frame building, an ice house and a few sheds. The buildings on the farm, an open tract of land, were about one-eighth of a mile off Lamont street in Springfield and at the end of a road or way leading from that street to the buildings. At about 7:40 p. m. of the day in question, the prohibition agents and the two police officers in two automobiles entered the road leading from Lamont street and stopped within ten or fifteen feet of the three-story building. As the officers got out of their automobiles they smelled the odor of alcohol and mash. The main entrance to this three-story building, in front of which they stopped, was a sliding door wide enough to drive in a truck and, according to the evidence, was open some four to six inches. It further appears that, as the officers approached the opening in the door, they smelled the odor of alcohol and mash, heard sounds indicating the distillation of liquor and saw through the door a small light burning on the ground floor; that they also saw a steam boiler, a still in full operation and two men working there; that one of the men was John Schook, the fireman, and the other John Porter; that thereupon they pushed the door further open and as they entered came upon the defendant Martin, whom they arrested; that the two men seen through the door ran upstairs in the building as the officers entered; that these two men and one other, Peter Marechelo, were later apprehended and arrested in the building; that these three men with Martin are the defendants in this case; that, in addition to the boiler and still on the first floor, there were a lot of drums there, some of which contained alcohol and others were empty; that the still was a round copper one with a capacity of about 2,500 gallons per day operated with steam from the boiler and that the columns of the still ran up through the second and third floors; that the still was about full and a good big stream was running from it through an inch pipe into barrels; that from a vat or mixing tank located in front of the still, which vat or tank was half buried in the ground, was a pipe through which the mash in the vat was pumped to the ice house where it was fermented; that the mash was pumped through this pipe by a steam pump out to the ice house and, after fermenting, was pumped back to the still for distillation; that a stairway led from the first floor to the second and from the second floor to the third; that on the second floor were found large quantities of alcohol and that above the second floor and on the third floor were found condensing coils; that on the second floor in the rear right-hand corner was a small room containing a kitchen stove, a table and chairs, where the men ate; and in

the left rear corner was a room containing an iron bed, the mattress of which was covered with dust; that on the third floor was a stove covered with dust and tin cans such as paint comes in; that under this stove was found a pocket book which contained an automobile license, No. 361,746, in the name of Nathan B. Martin and a registration certificate for a Reo sedan, dated January 1, 1930, the registration number being 332,612, standing in the name of Nathan B. Martin; that the pocket book also contained a couple of checks payable to Nathan B. Martin, one of which was for $450 drawn on the Berlin National Bank of Berlin, N. H., and a clipping headed: "Alcohol plant worth million is wrecked"; that Martin, when first arrested, gave another name, but when confronted with the pocket book and contents, admitted that it was his pocket book and said: "Well, you have got me and I have got to take it under the chin."

■ By section 1, chap. 473 of the Act of March 2, 1929 (45 Stat. 1446), as amended January 15, 1931 (chapter 29, 46 Stat. 1036 [27 USCA § 91]), the penalty imposed for the illegal manufacture of intoxicating liquor is a fine not to exceed $10,000 or imprisonment not to exceed five years, or both. As the manufacture of the intoxicating liquor here in question exceeded one gallon and the number of persons engaged in its manufacture exceeded one, the full penalty imposed by section 91 applies, making the crime of which the defendants were found guilty a felony. The officers, therefore, having seen a felony being committed in their presence in the building, were authorized, without a search warrant, to enter the building and arrest the defendants and, as incidental thereto to search their persons, search the building (the whole of which was devoted to the illegal purpose and used in the manufacture of the intoxicating liquor), seize the liquor, the still, and other paraphernalia used in the conduct of the illegal business.

While counsel for the respective parties have called our attention to many cases, their diligence has failed to disclose any case where, under circumstances like those here involved, the arrest, search and seizure have been held to violate the Fourth and Fifth Amendments to the Constitution. The evidence obtained by reason of the arrest, search, and seizure, not being in violation of the defendants' constitutional rights, the refusal to suppress the evidence, the overruling of their exceptions to the introduction of the evidence, and the refusal to grant the motion to strike it out were all proper.

■ It appears that one of the prohibition officers, who was a witness at the trial, testified to making a sketch of the inside of the three-story building showing the location of the still and the other appliances therein, and also a sketch of the premises showing the location of the buildings on the farm in question and the roadway leading to it from Lamont street. These sketches were used by the witness in his oral testimony while describing the interior of the building and the premises surrounding the same. The sketches were admitted in evidence, subject to defendants' exception. Whether these sketches were strictly legal evidence and admissible, we do not find it necessary to decide, for the defendants were not prejudiced by their introduction, as they were used by the witness only as chalks and disclosed nothing beyond what he testified to orally in describing the territory surrounding the building and the interior of the building.

The evidence introduced was adequate to support the government's case and the motion for a directed verdict was rightly denied.

The judgment of the District Court is affirmed.